UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| LYLE BERNIER<br><br>        Plaintiff,<br><br>    vs.<br><br>AROOSTOOK COUNTY JAIL,<br><br>        Defendants. | Civil No. 20-303-JAW |

**DEFENDANT AROOSTOOK COUNTY JAIL'S MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Lyle Bernier alleges that Defendant Aroostook County Jail ("the County")[1] violated his rights under the United States Constitution and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") by failing to provide a Kosher and vegan diet, and by otherwise impeding his freedom to exercise religion. However, Mr. Bernier's claims are not viable because he failed to exhaust administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"); therefore Defendant is entitled to judgment as a matter of law. Even if Mr. Bernier had complied with the PLRA, his attempts to hold the County liable for constitutional violations fail because he has not identified a policy or custom that was the moving factor behind the alleged constitutional harm. Finally, Mr. Bernier's RLUIPA claims fail because the County's policy does not place a "substantial burden" on Mr. Bernier's religious exercise, and, even if it did, it furthers a compelling governmental interest by the least restrictive means. For these reasons, which are discussed below, the

---

[1] As this Court has noted, the "Aroostook County Jail, a bricks and mortar building, [is not] an appropriate defendant." *Carpine v. Foss*, No. 1:13-cv-00006-DBH, 2013 U.S. Dist. LEXIS 178334, at *12 (D. Me. Nov. 20, 2013). Therefore, the Defendant will analyze Mr. Bernier's claims as if they were asserted against Aroostook County. *See Soucy v. Me. Dep't of Corr.*, No. 1:20-cv-00024-JDL, 2020 U.S. Dist. LEXIS 30538, at *6 n.2 (D. Me. Feb. 24, 2020) (treating claims asserted against the Maine State Prison as a claim against the State of Maine).

Defendant is entitled to summary judgment on Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56.

## BACKGROUND

The claims against the County arise out of Mr. Bernier's incarceration at the Aroostook County Jail ("the Jail"), which began on May 21, 2019. The full factual background for the Motion for Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

## PROCEDURAL POSTURE

Plaintiff filed this Complaint on August 19, 2020, alleging violations of his constitutional rights under the First and Eighth Amendments, and the Religious Land Use and Institutionalized Persons Act. (ECF No. 1). On December 23, 2020, Mr. Bernier sent two letters to the Court, elaborating on the factual summary behind his Complaint. (ECF. No. 19). On January 19, 2021, the County filed its Answer and Affirmative Defenses. (ECF No. 20). On April 6, 2021, the County sent Interrogatories and Requests for Production of Documents to Mr. Bernier. (Wall Aff. ¶¶ 3-5). On June 9, 2021, the County filed a Motion to Extend Time to complete discovery and file motions, explaining that Plaintiff had not responded to discovery requests, and the County preferred to review discovery responses prior to the close of discovery. (ECF No. 24). The Court granted the motion on June 10, 2021 and set a new deadline to file motions of August 16, 2021.  (ECF No. 26). Mr. Bernier has not responded to the County's discovery requests. (Wall Aff. ¶ 5).

## STANDARD OF REVIEW

Summary judgment is designed to "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56. The moving party must "aver[] 'an absence of evidence to support a nonmoving party's case.'" *Garside*, 895 F.2d at 48 (quoting *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmovant is then required to present competent evidence to "establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Id.* (citations omitted). "A 'genuine' issue is one 'that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A 'material' issue is one that 'affects the outcome of the suit,' that is, an issue which, perforce, 'needs to be resolved before the related legal issues can be decided.'" *Id.* (quoting *Anderson*, 477 U.S. at 248, and *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

The United States Supreme Court has held that on issues in which the nonmovant bears the ultimate burden of proof, that party must present definite, competent evidence to rebut the motion. *Anderson*, 477 U.S. at 256-57. The nonmovant's evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mack*, 871 F.2d at 181. "[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Ingram* v. *Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005).

## ARGUMENT

### I.  MR. BERNIER'S CLAIMS AGAINST THE COUNTY ARE BARRED BY HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by the prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has held that exhaustion under the PLRA is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The Supreme Court has observed that exhaustion "has a decidedly

procedural emphasis . . . ." *Booth v. Churner*, 532 U.S. 731, 739 (2001). "That is, what must be exhausted is the process, not the form of relief." *Johnson v. Thyng*, 369 Fed. Appx. 144, 146 (1st Cir. 2010) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "All 'available' remedies must . . . be exhausted; those remedies need not meet federal standards; nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"A prisoner must exhaust administrative remedies before a complaint under § 1983 will be entertained even where the relief sought cannot be granted by the administrative process." *Johnson*, 369 Fed. Appx. at 147 (citing *Booth*, 532 U.S. at 734). The Supreme Court has held that a prisoner must complete the prison grievance procedures in order to properly exhaust administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

All of Mr. Bernier's claims against the County are asserted pursuant to 42 U.S.C. § 1983. Therefore, in order to survive summary judgment, Mr. Bernier must demonstrate that he exhausted all available administrative remedies of the Jail. § 1997e(a).

In a letter to the Court, Mr. Bernier wrote that he had "more than exhausted [his] resources. . . ." (ECF No. 19). However, that conclusory assertion is inconsistent with the record evidence, which establishes that Mr. Bernier did not exhaust available administrative remedies. The Jail has a grievance procedure available to inmates. (Clossey Aff. ¶ 5 & Exh. C). That procedure requires that the inmate file a grievance form describing the subject of the grievance and turn it into a corrections officer. *Id.* The corrections officer then turns the grievance over to the shift supervisor, who attempts to resolve the grievance prior to the end of the shift. *Id.* If the grievance is unable to be resolved, it will be forwarded to the jail administrator, who will review the grievance and provide a written response. If the prisoner wishes to appeal the written response, he must do so, appealing the decision to the sheriff within 10 days of the date of the response. *Id.*

Based on a review of Mr. Bernier's inmate file, as well as the records maintained by the Jail with respect to inmate grievances, while Mr. Bernier filed many grievances during his incarceration at the Jail, he never filed an appeal to any of his grievances (Clossey Aff. ¶¶ 12-13). By failing to pursue to conclusion all steps of the grievance process available to him, Mr. Bernier is barred from asserting claims under Section 1983 and RLUIPA against the County as a matter of Law. § 1997e(a). For this reason, the County is entitled to summary judgment on Plaintiff's claims.

**II.   MR. BERNIER'S CONSITUTIONAL CLAIMS AGAINST THE COUNTY FAIL BECAUSE HE HAS PRESENTED NO EVIDENCE OF A CUSTOM OR POLICY THAT WAS THE DRIVING FORCE BEHIND HIS ALLEGED CONSTITUTIONAL VIOLATION, AND, IN ANY EVENT, HE HAS NOT PRESENTED VIABLE CONSTITUTIONAL VIOLATIONS.**

A.   <u>Mr. Bernier's constitutional claims fail because he has not presented evidence of a custom or policy of the Jail that led to a deprivation of rights.</u>

Pursuant to Section 1983, a claim for relief may be asserted only against those persons who, "under color of law," act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. 42 U.S.C. § 1983; *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 402-03 (1997) (citing and quoting Section 1983). The United States Court of Appeals for the First Circuit has elaborated on this standard:

> In assessing the imposition of liability under section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." There are two aspects to this second inquiry: "(1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation."

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted) (emphasis in original). The Supreme Court has emphasized that Section 1983 "is not itself a source of substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 389-94 (1989) (citation omitted).

Governmental entity liability under Section 1983 can be assessed only "where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). The Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). The plaintiff must show both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton*, 489 U.S. at 387-90; *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Moreover, the policy or custom must be the result of acts or omissions of the municipality's policymakers that exhibit "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton*, 489 U.S. at 387-90; *Gaudreault*, 923 F.2d at 209.

Even if Mr. Bernier could generate an issue of material fact in this case concerning the existence of an underlying constitutional violation, he has presented no evidence of a policy or custom of the County that was the moving force behind any constitutional violations. To the contrary, as the summary judgment record reflects, the County maintains policies to ensure that inmates are able to worship and practice the religion of their choice. The County is therefore entitled to summary judgment.

B. <u>Mr. Bernier's First Amendment claim fails because the County's handling of his dietary restrictions was reasonably related to legitimate penological interests.</u>

The Free Exercise Clause of the First Amendment requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. U.S. Const. Amend. 1. However, the Supreme Court has held that a prison regulation which restricts an inmate's First Amendment rights is permissible if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The relevant inquiries in deciding the regulation's constitutionality are: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2)

6

whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation. *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011).

In his Complaint and subsequent letters to the Court, Mr. Bernier alleges that he spent his "entire incarceration without kosher blessed sustenance," that it was eight months before he received a "flawed" scripture, that the Jail had a flawed or failed Judaic holiday regard, and that he had to swap meals to avoid consuming non-vegan sustenance, which caused him to be transferred and subsequently injured in a fight. Plaintiff has presented no admissible record evidence to substantiate such claims.

As the summary judgment record demonstrates, Jail policy allows inmates to purchase religious texts, and indigent inmates are allowed to borrow texts. (Clossey Aff. ¶ 2 & Ex. A). When the County could not locate a Hebrew-English Torah for Mr. Bernier, they purchased one. (Clossey Aff. ¶ 10). The record also demonstrates that Jail staff attempted to discuss Jewish holiday observations with Mr. Bernier, but he refused to speak with them. (Cummings Aff. ¶ 10). Accordingly, the County researched customs of its own volition to ensure that Mr. Bernier's holiday customs were honored. (*Id.* ¶¶ 11-12). Moreover, the County conferred with a Rabbi to inquire whether it was necessary to have the facility blessed, and to ensure they were doing all that was necessary to accommodate Mr. Bernier's religious requirements. (*Id.* ¶¶ 7-9). The County diligently tracked Mr. Bernier's meals and calorie counts to ensure that he was offered a balanced, adequate kosher and vegan diet. (*Id.* ¶ 6). Meanwhile, the record demonstrates that Mr. Bernier was frequently ordering non-kosher and non-vegan items through the commissary. (Clossey Aff. ¶ 11).

An application of the *Turner* factors does not suggest a violation of Mr. Bernier's First Amendment rights by the County. The County's policy is to provide inmates with the necessary religious services, and to accommodate Kosher diets by using separate cookware and to store the cookware in a separate part of the facility. (Clossey Aff. ¶ 2 & Exh. A; Cummings Aff. ¶¶ 4-5).

This policy ensures that Orthodox inmates are afforded Kosher meals, while also protecting a governmental interest, as any alternative methods – such as hiring a catering service or constructing a separate kitchen – would be prohibitively expensive. *See Curry v. Cal. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 1659, at *22 (N.D. Cal. Jan. 4, 2013) (granting summary judgment to defendant department of corrections against an inmate who followed a specialized vegan diet for religious purposes, holding that there is a compelling government interest in avoiding a meal plan that is extraordinarily expensive to provide).

It is unnecessary to analyze whether an alternative means to exercise the right exists because Mr. Bernier was, in fact, offered a Kosher diet, prepared in a way that was approved by a Rabbi and consistent with religious practices. Mr. Bernier was offered a calorically appropriate Kosher and vegan diet that was prepared with separate cookware in a separate part of the facility. Certainly, this is an adequate means to practice a Kosher diet. There is no indication in the summary judgment record that an alternative means was necessary. To the extent that Mr. Bernier intends to argue that the County needed to hire an outside catering service, or to construct a separate kitchen to prepare separate meals, those options would constitute an exorbitant cost on the County (and taxpayers). Nor, according to the Rabbi the County consulted, were such measures necessary.

Mr. Bernier has not established that there is any causal link between the Jail policy, which provided him adequate meals consistent with his religious practices, and his alleged harm. Moreover, he has not established that the policy is the result of acts or omissions of the Jail that exhibit "deliberate indifference" to the rights of the inmates at the Jail. Therefore, the County is entitled to judgment as a matter of law on Mr. Bernier's First Amendment claim.

  C. <u>The County did not violate the Eighth Amendment, as they appropriately accommodated Mr. Bernier's religious and medical needs.</u>

Mr. Bernier also alleges that the County violated his Eighth Amendment rights by "neglect," and he alleges that he has suffered a 40-pound weight loss, severe hair loss, sleep apnea, migraines, and a spiritual and physical burden from disregard of his religious principles. (ECF No. 1). To prove an Eighth Amendment violation, a plaintiff must show that he faced an "objectively intolerable" risk of harm resulting from the department's policy or conduct. *Lakin v. Barnhart*, 758 F.3d 66, 71 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). A plaintiff must then show that state officials knew of and disregarded the risk of harm. *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 142 (1st Cir. 2014) (internal quotations and citations omitted). To satisfy the "deliberate indifference" requirement, a plaintiff must demonstrate that "state officials were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and drew the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Mr. Bernier has put forth no facts to support his Eighth Amendment claim. He has not demonstrated an "objectively intolerable" risk of harm resulting from the department's policy or conduct. He has put forth no facts to explain the risks he is subjected to as a result of the County's policy. His complaint and subsequent letters list medical ailments, but his complaints are unaccompanied by medical analysis. *Id.* at 143. In fact, many of the medical ailments he alleges are pre-existing.

Even assuming, *arguendo*, Mr. Bernier could show there was an objectively intolerable risk, he cannot meet the threshold of showing deliberate indifference. The County prepared nutritional kosher and vegan meals with sufficient calorie content for Mr. Bernier. (Cummings Aff. ¶¶ 4-6). Outside of the jail cafeteria, Mr. Bernier purchased extra items from the commissary, some of which was not vegan or kosher. (Clossey Aff. ¶ 11). None of this rises to the level of conduct required to constitute cruel and unusual punishment. Thus, Mr. Bernier cannot

support a claim for violation of his constitutional rights, and the County is entitled to judgment as a matter of law on his constitutional claims.

### III. MR. BERNIER'S RLUIPA CLAIM FAILS BECAUSE THE COUNTY'S POLICY DOES NOT IMPOSE A SUBSTANTIAL BURDEN ON RELIGIOUS EXERCISE, AND EVEN IF IT DID, THE BURDEN FURTHERS A SIGNIFICANT GOVERNMENTAL INTEREST BY THE LEAST RESTRICTIVE MEANS.

Mr. Bernier also alleges that the County violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Namely, he alleges that he was not offered "proper Kosher blessed sustenance," that he went eight months until he received a "flawed" scripture, the there was a "flawed/failed" Judaic holiday regard, that he received snide responses by officers in regard to ongoing issues, and that he suffered the "spiritual burden and the physical burden from disregard." (ECF No. 1)

Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…unless the government demonstrates that imposition of the burden on that person – is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." The Supreme Court has held that RLUIPA does not elevate the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005); *Kuperman v. Wrenn*, 645 F.3d 69, 79 (1st Cir. 2011). To survive a challenge under RLUIPA, jail officials must show that its regulation was the least restrictive means available to further the governmental interest. *Id*.

In *Kuperman*, the plaintiff, an inmate at the New Hampshire State Prison, filed a complaint regarding the prison's shaving policy, which required that all inmates be clean-shaven, unless they obtained a medical or religious waiver which allowed them to maintain a ¼ inch beard. *Id.* at 71. The First Circuit noted that that the restriction was reasonably related to the penological interests of the Prison. *Id.* at 72. When analyzing whether an alternate means

10

existed, the First Circuit held that its "inquiry was not into whether a religiously-acceptable alternative to growing a full beard existed. Instead, [it] consider[ed] whether alternative means remained open for Kuperman to exercise the constitutionally-protected right at issue — here, free exercise of his religion." *Id.* at 75; *see also Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 861 (5th Cir. 2004) (holding that "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith"); *Green v. Polunsky*, 229 F.3d 486, 489 n.15 (5th Cir. 2000) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987)) (looking to whether inmates were afforded other avenues to express their religious beliefs, and not whether they were allowed a means to express their beliefs in their specific preferred way).

   As discussed *supra,* the County's policy regarding providing inmates with kosher or vegan meals allows inmates to worship the religion of their choice, and specifically prohibits any employee or official of the County from denying an inmate of their right to worship. (Clossey Aff. ¶ 2 & Exh. A). The policy further states that any restrictions pertaining to the worship and practice of a religion will be subject only to those limitations necessary to maintain the order and security of the Jail. *Id*. This policy is in place to allow inmates to worship, while also furthering the compelling governmental interest in avoiding excessive cost. The policy does not impose a substantial burden on Mr. Bernier's religious exercise. Even if, *arguendo,* this Court held that it did, the burden furthers a significant government interest by the least restrictive means available.

   As outlined above, the County researched Kosher diet requirements, spoke to a local Rabbi, diligently tracked Mr. Bernier's meals and caloric intake, kept Kosher pots and pans separate, and prepared Kosher meals in a separate area of the facility. The County attempted to discuss his religious holiday celebrations with Mr. Bernier, and when he refused to speak to them, Jail officials researched customs on their own, and conferred with a Rabbi to ensure Mr. Bernier's needs were met. The County also acquired a Hebrew-English Torah for Mr. Bernier. By

11

taking all of these measures, the County complied with the requirements of RLUIPA. Therefore, the County is entitled to summary judgment as a matter of law on Mr. Bernier's RLUIPA claim.

## CONCLUSION

For the reasons set forth in this Motion and supporting memorandum of law, Defendant Aroostook County Jail (effectively, Aroostook County) respectfully requests summary judgment in its favor on all claims.

Dated at Portland, Maine this 16th day of August, 2021.

        Attorneys for Defendant
        MONAGHAN LEAHY, LLP
        95 Exchange Street, P.O. Box 7046
        Portland, ME 04112-7046
        (207) 774-3906
        jwall@monaghanleahy.com

BY:   /s/ *John J. Wall, III*
        John J. Wall, III

        Attorneys for Defendant
        MONAGHAN LEAHY, LLP
        95 Exchange Street, P.O. Box 7046
        Portland, ME 04112-7046
        (207) 774-3906
        aknowles@monaghanleahy.com

BY:   /s/ *Allyson L. Knowles*
        Allyson L. Knowles

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2021, I electronically filed **Defendant Aroostook County Jail's Motion for Summary Judgment, With Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to all counsel of record. In addition, I hereby certify that I have served a copy of this document on the Plaintiff by first class mail, postage prepaid, to the following address:

    Lyle Bernier
    57 North Street
    Houlton, ME 04730

Dated at Portland, Maine this 16th day of August, 2021.

    Attorneys for Defendant Aroostook County Jail
    MONAGHAN LEAHY, LLP
    95 Exchange Street, P.O. Box 7046
    Portland, ME 04112-7046
    (207) 774-3906
    jwall@monaghanleahy.com

BY:    /s/ John J. Wall, III
        John J. Wall, III