UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LYLE BERNIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00303-JAW |
| | ) | |
| AROOSTOOK COUNTY JAIL | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

A plaintiff brought this suit against the jail where he was incarcerated, alleging that the jail failed to provide him a nutritionally-adequate vegan and kosher diet and otherwise infringed his freedom to exercise his Jewish religion, in violation of the First and Eighth Amendments and the Religious Land Use and Institutionalized Persons Act. The jail moves for summary judgment. The Court grants the motion because the plaintiff failed to fully exhaust his administrative remedies prior to bringing this suit, as required under the Prison Litigation Reform Act, and moreover failed to properly contest the jail's factual record, thereby eliminating any factual disputes and entitling the jail to summary judgment as a matter of law.

## I.    PROCEDURAL HISTORY

On August 19, 2020, Lyle Bernier filed a pro se complaint in federal court against the Aroostook County Jail[1] in Houlton, Maine, pursuant to 42 U.S.C. § 1983,

---

[1] Although Mr. Bernier named the Aroostook County Jail as a defendant, "Aroostook County Jail, a bricks and mortar building, [is not] an appropriate defendant." *Carpine v. Foss*, No. 1:13-cv-00006-DBH, 2013 U.S. Dist. LEXIS 178334, at *12 (D. Me. Nov. 20, 2013). Therefore, the Court will

alleging violations of the First and Eighth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Compl.* (ECF No. 1). On September 10, 2020, Mr. Bernier filed a motion for leave to proceed in forma pauperis, which the Magistrate Judge granted on September 11, 2020. *Mot. for Leave to Proceed In Forma Pauperis* (ECF No. 7); *Order Granting Mot. for Leave to Proceed In Forma Pauperis* (ECF No. 8). On September 25, 2020, Mr. Bernier filed a motion to subpoena evidence, which the Magistrate Judge denied as the Court had not yet authorized discovery. *Mot. to Subpoena Evid.* (ECF No. 9); *Order* (ECF No. 10).

On October 14, 2020, the Magistrate Judge ordered Mr. Bernier to show cause or face dismissal of his lawsuit, as Mr. Bernier had yet to inform the Court whether he intended to incur the cost of the filing fee to proceed with this action, as directed in the Magistrate Judge's September 11 order. *Order to Show Cause* (ECF No. 11). On October 23, 2020, Mr. Bernier responded to the order to show cause, indicating his willingness to proceed and suggesting the Jail had interfered with his correspondences with the Court. *Resp. to Order to Show Cause* at 1 (ECF No. 12) (*Pl.'s Show Cause Resp.*). On October 25, 2020, the Court terminated the order to show cause. *Order* (ECF No. 13).

On October 26, 2020, the Clerk's Office sent the Jail a letter, indicating that the Jail should send payments from Mr. Bernier's inmate account to pay the filing

---

construe Mr. Bernier's claims as if they were asserted against Aroostook County. *See George v. York Cty. Jail*, No. 2:19-cv-00569-GZS, 2020 U.S. Dist. LEXIS 9211, *1 n.1 (D. Me. Jan. 21, 2020) (treating claims asserted against the York County Jail as claims against York County).

fee. *Letter from Christa K. Berry to Business Office/Prisoner Accounts, Aroostook County Jail* (Oct. 26, 2020) (ECF No. 14). On November 25, 2020, Mr. Bernier submitted a supplement to his response, which included a letter to the Court and his documentation of his meals and grievances from the month of October 2020. *Suppl. to Resp. to Order to Show Cause* at 1-6 (ECF No. 16) (*Pl.'s Suppl. Resp.*). On December 23, 2020, Mr. Bernier submitted additional letters to the Court in support of his Complaint. *Correspondence in Supp. of Compl.* (ECF No. 19) (*Pl.'s Correspondence*).

On January 19, 2021, Aroostook County answered the Complaint and asserted that Mr. Bernier's claims were barred pursuant to the immunity provisions of the Maine Tort Claims Act, the applicable statutes of limitations, and the Prison Litigation Reform Act's exhaustion requirements, among other affirmative defenses. *Answer to Compl. and Affirmative Defenses and Demand for Jury Trial (Aroostook County Jail)* at 6-8 (ECF No. 20). On June 9, 2021, Aroostook County filed motions to extend the discovery and motion deadlines and extend the ready for trial date past September 7, 2021, citing Mr. Bernier's failure to respond to discovery requests and explaining that it mailed its requests to his new address on May 20, 2021. *Def.'s Mots. to Extend Disc. Deadline and Mot. Deadline* (ECF No. 24); *Def.'s Mot. to Extend Ready for Trial Date* (ECF No. 25). On June 10, 2021, the Court granted Aroostook County's motions and extended the discovery deadline to July 23, 2021, *Order* (ECF No. 26), the deadline to file dispositive motions to August 16, 2021, *id.*, and the trial date to October 6, 2021. *Order* (ECF No. 28).

On August 16, 2021, Aroostook County Jail filed its motion for summary judgment and related statement of material facts. *Def. Aroostook County Jail's Mot. for Summ. J.* (ECF No. 31) (*Def.'s Mot.*); *Def. Aroostook County Jail's Statement of Material Facts in Supp. of Mot. for Summ. J.* (ECF No. 32) (DSMF). On September 9, 2021, Mr. Bernier responded in opposition to Aroostook County's motion for summary judgment, in the form of a two-page letter with attached handwritten documentation of his grievances, copies of his grievance forms, and receipts from the administrative complaints that he filed with the Jail. *Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 37) (*Pl.'s Opp'n*). He did not respond to Aroostook County's statement of material facts or submit his own additional statement of material facts. On September 23, 2021, Aroostook County replied to Mr. Bernier's filing in opposition to its motion for summary judgment. *Reply Mem. of Law in Supp. of Def. Aroostook County Jail's Mot. for Summ. J.* (ECF No. 38) (*Def.'s Reply*).

## II.    BACKGROUND

### A.    Local Rule 56 and Prisoner Litigation

District of Maine Local Rule 56 requires that factual assertions in support of or in opposition to a motion for summary judgment be set forth in a separate statement of material facts. D. ME. LOC. R. 56(a), (b), (f). However, a court "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7-8 (1st Cir. 2002). "Instead, a court must assess whether the movant has shown 'that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"
*Schoff v. Fitzpatrick*, No. 2:16-cv-00609-NT, 2018 U.S. Dist. LEXIS 37034, at *2 n.2
(D. Me. Mar. 7, 2018) (quoting FED. R. CIV. P. 56(a)).

"In the context of prisoner litigation in this district, special care must be taken
with a prisoner's pro se filings in opposition to a motion for summary judgment."
*Goguen v. Gilblair*, No. 1:12-cv-00048-JAW, 2013 U.S. Dist. LEXIS 138500, at *5 (D.
Me. June 20, 2013).  "This [C]ourt has observed that a prisoner's nonconforming
summary judgment submission should be reviewed by the court and that facts set
forth in a verified complaint or prisoner affidavit should be considered when
examining the entire summary judgment record."  *Id.* (citing *Clarke v. Blais*, 473 F.
Supp. 2d 124, 128 (D. Me. 2007); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-83 (D.
Me. 2007) (discussing pro se prisoners and motions for summary judgment)).

Here, Aroostook County complied with the Local Rules by setting forth a
statement of material facts supported by record citations.  *See* DSMF ¶¶ 1-28.
However, Plaintiff did not file an opposing statement of material facts as required
under Local Rule 56(c).  D. ME. LOC. R. 56(c).  While the Court accords Mr. Bernier
latitude as a pro se prisoner, Mr. Bernier has not supplied any countervailing facts.
Unlike some cases, there is no affidavit and no verified complaint.  Before Aroostook
County filed its dispositive motion, Mr. Bernier filed multiple exhibits as attachments
to his filings (mostly grievance-related paperwork and records, as well as his accounts
of what he was served at each meal) but these filings are not verified and, as they
were filed before Aroostook County's motion, are not responsive to Aroostook County's

5

statement of material facts.  *See Pl.'s Show Cause Resp.*; *Pl.'s Suppl. Resp.*; *Pl.'s Correspondence*.

Mr. Bernier's September 9, 2021, response to the motion itself makes several factual assertions, but they are not in a proper form, making it impossible for Aroostook County to respond.  *Pl.'s Opp'n* at 1-2.  Because Plaintiff did not file an opposing statement contradicting Aroostook County's statement of material facts, the factual assertions in the Defendant's statement are deemed admitted.  *See* D. ME. LOC. R. 56(f) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted").  "Notwithstanding the foregoing, as the non-moving party [Mr. Bernier] is entitled to have the summary judgment facts considered in the light most favorable to his cause."  *Goguen*, 2013 U.S. Dist. LEXIS 138500, \*7 (citing *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011)).

### B.   Factual Background

On May 21, 2019, Lyle Bernier was incarcerated at the Aroostook County Jail in Houlton, Maine.  DSMF ¶ 1; *Aff. of Craig L. Clossey* ¶ 6 (ECF No. 33) (*Clossey Aff.*).  At booking, the Jail recorded Mr. Bernier's height (6'00" tall) and weight (255 pounds) and took his medical history, which included mental or emotional problems and Post-Traumatic Stress Disorder.  DSMF ¶¶ 2-3; *Clossey Aff.* ¶¶ 7-8.  During intake, Mr. Bernier informed the Jail that he was Jewish and that he required a kosher and vegan diet.[2]  DSMF ¶ 4; *Clossey Aff.* ¶ 9.  The Jail had procedures in place to ensure

---

[2]   Mr. Bernier does not clarify whether his vegan dietary preference is related to his Jewish faith.

kitchen compliance with religious dietary needs. DSMF ¶ 5. The Jail kitchen procedure states that "[t]he head cook will prepare special diets to meet the religious beliefs of inmates upon approval from the Jail Administrator" and "[m]eals will be planned and prepared after consultation with appropriate religious professionals." *Aff. of Denise Cummings* (ECF No. 34) (*Cummings Aff.*), Attach. 1, *Aroostook County Jail Procedure B: Special Diets, Religious Beliefs* (*Special Diets Policy*); *see* DSMF ¶ 6. The Jail prepares kosher meals in separate pots and pans, which are also stored and washed separately from the rest of the pots and pans. DSMF ¶ 7.

Mr. Bernier's meals were prepared according to the Special Diets Policy, and Jail staff tracked them to ensure sufficient caloric content. DSMF ¶ 8. Jail staff discussed kosher meal preparation with a local Rabbi, who indicated that their procedures were sufficient. DSMF ¶ 9. Jail staff also attempted to discuss specific religious customary meals with Mr. Bernier, who was uncooperative. DSMF ¶ 10. Instead, staff conducted their own research to in an effort to comply with Jewish religious custom. DSMF ¶ 11. During his incarceration at the Jail, Mr. Bernier purchased non-vegan and non-kosher commissary items. DSMF ¶ 12.

The Jail has established procedures for religious services. DSMF ¶ 13; *Clossey Aff.*, Attach. 1, *Aroostook County Jail Procedure A: Religious Services, General* (*Religious Services Policy*). The Jail's Religious Services Policy specifically provides that inmates "will have the opportunity to participate in those practices of their religion that are deemed essential by the governing body of that faith, subject to reasonable constraints necessary to ensure the safety of staff, religious workers, and

inmates of the jail's security and good order." DSMF ¶ 14. The Jail's policy allows inmates to have access to religious publications. DSMF ¶ 15. On January 9, 2020, the Jail ordered a Hebrew-English Torah for Mr. Bernier, which arrived and was delivered to him on January 17, 2020. DSMF ¶ 16.

The Jail also has an established grievance policy, which instructs inmates to file grievance forms with the corrections staff on duty, who will elevate the grievance to the shift supervisor. DSMF ¶ 17; *Clossey Aff.*, Attach. 2, *Aroostook County Jail Procedure A: Internal Grievance Procedures* (*Grievance Policy*). Once a grievance is filed, the shift supervisor will attempt to resolve the grievance, and if they are unable to, will elevate it to the Jail Administrator, who issues a decision. DSMF ¶ 18. If the inmate wishes to appeal the decision, he must do so to the Sheriff within ten days of receiving the decision. DSMF ¶ 19. Mr. Bernier filed numerous grievances during his incarceration, all of which were promptly addressed and/or answered. DSMF ¶ 20. Mr. Bernier did not appeal any of the grievance responses. DSMF ¶ 21.

On April 6, 2021, Aroostook County sent Interrogatories and Requests for Production of Documents to Mr. Bernier. DSMF ¶ 25. On June 9, 2021, the County filed a motion to extend time to complete discovery and file motions, explaining that Mr. Bernier had not responded to discovery requests, that it resent them to his new address, and that it needed time to review discovery responses prior to the close of discovery. DSMF ¶ 26. On June 10, 2021, the Court granted the motion to extend time and set a new deadline to file motions by August 16, 2021. DSMF ¶ 27. Mr.

8

Bernier still has not responded to Aroostook County's discovery requests.  DSMF ¶ 28.

## III.   THE PARTIES' POSITIONS

### A.   Aroostook County's Motion for Summary Judgment

Aroostook County urges that it is entitled to judgment as a matter of law because (1) the exhaustion requirements of the Prison Litigation Reform Act bar Mr. Bernier's claims, (2) he has failed to identify "a policy or custom that was the moving factor behind the alleged constitutional harm," (3) and "the County's policy does not place a 'substantial burden' on Mr. Bernier's religious exercise" under the RLUIPA and any burden furthered "a compelling governmental interest by the least restrictive means." *Def.'s Mot.* at 1.

#### 1.   Mr. Bernier's Compliance with the PLRA

First, Aroostook County contends that the Prison Litigation Reform Act (PLRA), 42 U.S.C § 1997e(a), bars this action because Mr. Bernier failed to fully exhaust his administrative remedies. *Id.* at 3.  It emphasizes that because "[a]ll of Mr. Bernier's claims against the County are asserted pursuant to 42 U.S.C. § 1983," he "must demonstrate that he exhausted all available administrative remedies of the Jail" to survive summary judgment. *Id.* at 4.  Aroostook County argues that exhaustion of all remedies is mandatory "even where the relief sought cannot be granted by the administrative process," *id.* (citing *Johnson v. Thyng*, 369 F. App'x. 144, 147 (1st Cir. 2010)), and that "it is the prison's requirements, and not the PLRA,

9

that define the boundaries of proper exhaustion." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Mr. Bernier says in his letter to the Court that he has "more than exhausted [his] resources where management is doing opposite of what they say," with "fallaciously answered grievance forms." *Correspondence in Supp. of Compl.*, Attach. 1, *Second Letter* at 2. Aroostook County deems his assertions "conclusory" and "inconsistent with the record evidence, which establishes that Mr. Bernier did not exhaust available administrative remedies." *Def.'s Mot.* at 4. Aroostook County explains that the Jail's grievance policy requires that:

> the inmate file a grievance form describing the subject of the grievance and turn it into a corrections officer. The corrections officer then turns the grievance over to the shift supervisor, who attempts to resolve the grievance prior to the end of the shift. If the grievance is unable to be resolved by the officer's shift supervisor, it will be forwarded to the jail administrator, who will review the grievance and provide a written response. If the prisoner wishes to appeal the written response, he must do so, appealing the decision to the sheriff within 10 days of the date of the response.

*Grievance Procedure*; *Def.'s Mot.* at 4.

Aroostook County concludes that, based on Mr. Bernier's inmate file and its own records of inmate grievances, "Mr. Bernier filed many grievances during his incarceration at the Jail, [but] he never filed an appeal to any of his grievances." *Def.'s Mot.* at 5. Aroostook County submits that "[b]y failing to pursue to conclusion all steps of the grievance process available to him, Mr. Bernier is barred from asserting claims under Section 1983 and RLUIPA" and it is thus entitled to judgment as a matter of law. *Id.*

10

### 2.   Mr. Bernier's Failure to Identify a Policy or Custom

Second, Aroostook County asserts that Mr. Bernier cannot prevail on his constitutional claims because he has not presented evidence of a specific custom or policy behind the alleged violations of his First and Eighth Amendment rights.  *Id.*

Aroostook County notes that § 1983 claims can only be asserted "against those persons who 'under color of law,' act to deprive another of 'rights, privileges, or immunities' secured by the Constitution or federal law."  *Id.* (quoting 42 U.S.C. § 1983).  Furthermore, § 1983 "is not itself a source of substantive rights" and only places liability on a municipality where it "itself causes the constitutional violation at issue."  *Id.* at 5-6 (first quoting *Graham v. Connor*, 490 U.S. 386, 389-94 (1989), then *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Aroostook County emphasizes that "[t]he Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged," with "both the existence of a policy or custom and a causal link between that policy and the constitutional harm" and a showing that the policy or custom is the result of "deliberate indifference" to the plaintiff's rights.  *Id.* at 6 (quoting *City of Canton*, 489 U.S. at 387-90).  Aroostook County reasons that "[e]ven if Mr. Bernier could generate an issue of material fact in this case concerning the existence of an underlying constitutional violation, he has presented no evidence of a policy or custom of the County that was the moving force behind any constitutional violations."  *Id.*  It submits that, "as the summary judgment record reflects, the County maintains policies to ensure that inmates are able to worship and practice the religion of their

11

choice," urging the Court to find it entitled to summary judgment as to Mr. Bernier's constitutional claims. *Id.*

### 3.    Mr. Bernier's First Amendment Claim

Aroostook County next submits that if its policies did in any way restrict Mr. Bernier's First Amendment right to freely exercise his Jewish faith, any such restriction was "reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Aroostook County recounts the First Circuit's standard for assessing the constitutionality of restrictions on an inmate's free exercise of religion:

> (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation.

*Id.* at 6-7 (quoting *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011)).

Aroostook County turns to Mr. Bernier's allegations, in his complaint and in his subsequent letters to the Court, that the Jail failed to provide appropriate kosher and vegan food and religious texts and to accommodate holiday observations. *Id.* at 7. It contends that "Plaintiff has presented no admissible record evidence to substantiate such claims." *Id.* Aroostook County says that "[a]s the summary judgment record demonstrates, Jail policy allows inmates to purchase religious texts, and indigent inmates are allowed to borrow texts." *Id.* It recounts that "[w]hen the County could not locate a Hebrew-English Torah for Mr. Bernier, they purchased one," and that "Jail staff attempted to discuss Jewish holiday observations with Mr.

Bernier, but he refused to speak with them." *Id.* Aroostook County notes that, despite this, Jail staff "researched [Jewish] customs of [their] own volition" and "conferred with a Rabbi to inquire whether it was necessary to have the facility blessed, and to ensure they were doing all that was necessary to accommodate Mr. Bernier's religious requirements." *Id.* Regarding Mr. Bernier's alleged health problems as a result of being denied access to appropriate food, the Jail insists that it "diligently tracked Mr. Bernier's meals and calorie counts to ensure he was offered a balanced, adequate kosher and vegan diet." *Id.* Aroostook County submits that "Mr. Bernier was frequently ordering non-kosher and non-vegan items through the commissary." *Id.*

Aroostook County reasons that "the *Turner* factors do not suggest a violation of Mr. Bernier's First Amendment rights by the County," emphasizing its explicit policy to "provide inmates with the necessary religious services, and to accommodate kosher diets" with separate cookware and storage. *Id.* It argues that "[t]his policy ensures that Orthodox inmates are afforded [k]osher meals, while also protecting a governmental interest, as any alternative methods – such as hiring a catering service or constructing a separate kitchen – would be prohibitively expensive." *Id.* at 8. Furthermore, Aroostook County submits that "[i]t is unnecessary to analyze whether an alternative means to exercise the right exists" under *Turner* "because Mr. Bernier was, in fact, offered a [k]osher diet, prepared in a way that was approved by a Rabbi and consistent with religious practices" and moreover calorically appropriate. *Id.* Reasoning that "this is an adequate means to practice a [k]osher diet," Aroostook

13

County contends that "[t]here is no indication in the summary judgment record that an alternative means was necessary." *Id.* It asserts that special catering services or separate kitchen accommodations would place "an exorbitant cost on the County" and were not deemed necessary by the Rabbi the Jail staff consulted. *Id.* Aroostook County concludes that "Mr. Bernier has not established that there is any causal link between the jail policy, which provided him adequate meals consistent with his religious practices, and his alleged harm," nor has he provided requisite evidence of "deliberate indifference," and thus his First Amendment claims fail as a matter of law. *Id.*

### 4. Mr. Bernier's Eight Amendment Claim

Aroostook County turns to Mr. Bernier's allegations that the Jail's "neglect" and failure to accommodate his nutritional needs harmed his mental and physical health, in violation of his Eighth Amendment rights. *Id.* at 9. It submits that under First Circuit precedent, Mr. Bernier "must show that he faced an 'objectively intolerable' risk of harm resulting from the department's policy or conduct." *Id.* (quoting *Lakin v. Barnhart*, 758 F.3d 66, 71 (1st Cir. 2014)). "A plaintiff must then show that state officials knew of and disregarded the risk of harm," *id.*, with a demonstration that "state officials were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and drew the inference." *Id.* (quoting *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 142 (1st Cir. 2014) (internal citations omitted)).

Aroostook County insists that "Mr. Bernier has put forth no facts to support his Eighth Amendment claim" and has not shown an "objectively intolerable" risk of harm from Aroostook County's policies or conduct. *Id.* It says that Mr. Bernier "has put forth no facts to explain the risks he is subjected to" as the ailments listed in his court filings "are unaccompanied by medical analysis" and, Aroostook County suggests, "pre-existing." *Id.* Aroostook County reasons that even if Mr. Bernier could show an objectively intolerable risk, he is unable to make the required showing of deliberate indifference on its part. *Id.* Aroostook County contends that the Jail staff's efforts to prepare special, calorie-sufficient meals hardly "rises to the level of conduct required to constitute cruel and unusual punishment," concluding that it is entitled to summary judgment on Mr. Bernier's Eighth Amendment claims. *Id.* at 9-10.

### 5.    Mr. Bernier's RLUIPA Claim

Finally, Aroostook County addresses Mr. Bernier's invocation of the RLUIPA of 2000. It submits that "RLUIPA does not elevate the 'accommodation of religious observances over an institution's need to maintain order and safety.'" *Id.* at 10 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)). "To survive a challenge under RLUIPA, jail officials must show that its regulation was the least restrictive means available to further the governmental interest." *Id.* Aroostook County points to *Kuperman v. Wrenn*, where the First Circuit found that the New Hampshire State Prison's requirement that prisoners be clean shaven, absent a medical or religious waiver, was reasonably related to the Prison's penological interests. *Id.* at 10-11 (citing *Kuperman*, 645 F.3d at 72).

15

Aroostook County emphasizes that its Religious Services Policy "allows inmates to worship the religion of their choice, and specifically prohibits any employee or official of the County from denying an inmate of their right to worship." *Id.* at 11. Aroostook County submits that even if the Court does find its policies restrictive of the right to worship, any limitations are "necessary to maintain the order and security of the Jail" and "further[] a significant government interest [in avoiding excessive cost] by the least restrictive means available." *Id.* Again, Aroostook County points to the Jail staff's efforts (1) to plan and prepare calorically-sufficient kosher meals; (2) consult with a Rabbi and Mr. Bernier himself as to proper religious observance; and (3) obtain a Hebrew-English Torah for Mr. Bernier as evidence of its compliance with the RLUIPA. *Id.* at 11-12. Aroostook County concludes that it is also entitled to judgment as a matter of law on Mr. Bernier's RLUIPA claim. *Id.* at 12.

## B.    Lyle Bernier's Opposition

In his response to Aroostook County's motion for summary judgment, Mr. Bernier submits that he is ready to "provide more documentation," and that he has "requested medical records from Aroostook County Jail and [is] awaiting those files." *Pl.'s Reply* at 1. He attaches "the corresponding communications between Jail Representatives and [him]self," documenting "multitudes of issues" that remain "without resolve in response by management during tenure of this strife." *Id.* Mr. Bernier maintains that "Aroostook County Jail Administration knowingly neglected or allowed Spiritual and the following physical detriment to occur without respect to

16

fullest intent of" the First and Eighth Amendments of the Constitution.  *Id.* at 1-2.

He alleges that his rights were infringed by:

> Entire neglect of Holidays aside [from] begged respect of Passover [at the] last minute; improper [and] impure housing in [the] Aroostook Facility[;] Facility restricted acquisition of Judaic scripture, namely 8+ months to receive flawed Torah[;] Impure sustenance incongruent with Rabbinical blessing of Orthodox vegan foods[;] Unclean/Blasphemous housing areas with repetitious blasphemies (sn[i]de banter/same foods); Neglected need of sequestered arrangements to avoid this burden.

*Id.* at 2.  He goes on to assert that he "was innocent when arrested."  *Id.*  He explains

that because of "[b]urdened Spiritual/physical angst with impure arrangements fully

transgressing The Torah," he has been "fasting to rid [himself] of the uncleanliness

to sabbaticals repeatedly till 19 months passed."  *Id.*  He alleges that when he was

"restricted to [a] condemnable trailer without water, heat, internet, sanitation, this

matter became unmanageable."  *Id.*  He concludes by saying that "as of 29th of last

month [his] own housing has been established so [he can] finally practice without

burdens freely."  *Id.*  The remainder of Mr. Bernier's eighty-one page filing consists

of what appear to be journal entries, his own logs of what he was served at mealtimes,

copies of the Inmate Grievance forms that he filed with the Jail, receipts from his

grievance filings, and additional handwritten pages detailing his complaints.  *Pl.'s*

*Opp'n*, Attach. 1, *Correspondence with Jail.*

### C.    Aroostook County's Reply

Aroostook County argues that Mr. Bernier's response in opposition to its

motion for summary judgment should be disregarded for noncompliance with the

Local Rules and Federal Rules of Civil Procedure and because it attaches materials

which Aroostook County contends should have been provided in response to its discovery requests, served on Mr. Bernier on April 6, 2021 and again on May 20, 2021, which he never responded to. *Def.'s Reply* at 1-4. Aroostook County also raises the tardiness of Mr. Bernier's response, filed two days after the September 7, 2021 deadline. *Id.* at 2. Mr. Bernier "did not address his tardiness, nor did he file a motion requesting an extension in order to file a response." *Id.* at 2-3.

Aroostook County recites the requirements, pursuant to District of Maine Local Rule 56, for the non-movant's response to the movant's statement of material facts in support of their motion for summary judgment. *Id.* at 1. It notes that "[a]ll material facts set forth in the statement required to be served by the moving party, if supported by appropriate record citations, shall be deemed admitted unless properly controverted" and that "summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.* at 1-2 (internal citations omitted). Aroostook County acknowledges that Mr. Bernier is proceeding pro se and thus "must be accorded a measure of liberality," but maintains that "[p]ro se parties are not relieved of the usual requirements of summary judgment." *Id.* at 2-3. It explains that "[i]f a party asserts that a fact cannot be, or is genuinely disputed, it must support that assertion with citations to materials in the record." *Id.* at 2 (citing D. ME. LOC. R. 56(c)(1)(A); FED. R. CIV. P. 56(c)(1)). Otherwise, Aroostook County states that the Court "may consider the fact undisputed and may grant summary judgment if the record supports it." *Id.*

Aroostook County goes on to assert that Mr. Bernier's "response in its entirety violates the rules and must be stricken." *Id.* at 3. It reasons moreover that "Mr. Bernier fails to address the issues presented in Aroostook County's Memorandum," and thus those issues are "effectively waived." *Id.* It cites *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), to urge the Court not to develop Mr. Bernier's arguments for him where he merely suggests potential challenges to the arguments in its motion for summary judgment. *Id.* Aroostook County contends that Mr. Bernier's "assertion that there is compelling evidence that has not been presented does not excuse Plaintiff of his summary judgment burden." *Id.*

Aroostook County argues that Mr. Bernier's two-page letter filed in opposition to its motion for summary judgment "does not respond to any of the Defendant's facts, nor does it present any properly cited additional facts." *Id.* Aroostook County says that Mr. Bernier merely repeats his complaint allegations, with references to his "readiness" to provide further documentation and his "need of a trial." *Id.* Aroostook County emphasizes that Mr. Bernier's allegations of harmful conduct lack "any citations to record evidence," and include references to his innocence, fasting, and current housing situation that it deems "irrelevant to his underlying claims." *Id.*

As to Mr. Bernier's eighty-one-page addendum "containing grievances, hand-written pages which appear to be journal entries, e-mails, letters, inmate requests, and copies of receipts," Aroostook County asserts that "none [of it has] been properly authenticated or cited." *Id.* at 4. Moreover, Aroostook County notes that "Mr. Bernier did not respond to Aroostook County's discovery request" and never produced any of

19

these documents as requested in April and May of 2021. *Id.* Aroostook County reasons that "[u]nder Local Rule 37(c)(1), if a party fails to provide information as required by Local Rule 26, the party is not allowed to use that information . . . unless the failure was substantially justified or harmless." *Id.* It contends Mr. Bernier has made no such showing to justify application of the exception here, and maintains that "as the material [submitted with Mr. Bernier's response] contains information[,] grievances and journal entries pertaining to his claims, his failure to produce them is not harmless." *Id.* Aroostook County asks the Court to strike Mr. Bernier's attachment under Local Rule 37(c)(1). *Id.*

Aroostook County summarizes that "Mr. Bernier has not responded to the arguments raised in Aroostook County's memorandum, he has not denied any of the facts that Aroostook County included in its Statement of Material Facts, and he has not submitted any supported additional material facts." *Id.* It urges the Court to consider its statement of material facts undisputed and admitted by Mr. Bernier. *Id.* Furthermore, Aroostook County asserts that because Mr. Bernier "failed to submit a properly executed statement of material facts, the Court cannot consider any of the 'facts' in Plaintiff's responsive pleading" in assessing the record on summary judgment. *Id.*

## IV.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could

resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a court "views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V.  DISCUSSION

### A.    Compliance with the Rules

With respect to the summary judgment record, Aroostook County complied with Federal Rule of Civil Procedure 56 and District of Maine Local Rule 56.   In addition to its summary judgment memorandum, Aroostook County filed a statement of material facts that contains record citations to the affidavits of: Craig Clossey, Administrator of the Aroostook County Jail; Denise Cummings, the Jail Corrections Officer who oversaw preparation of Mr. Bernier's meals and consulted with a Rabbi at Congregation Beth Israel in Bangor, Maine regarding kosher dietary needs; and the County's attorney John J. Wall, III, who served discovery requests on Mr. Bernier. *Clossey Aff.*; *Cummings Aff.*; *Aff. of John J. Wall, III* (ECF No. 35) (*Wall Aff.*). Aroostook County attached to these affidavits copies of its Religious Services Policy, Grievance Policy, Special Diets Policy, and the interrogatories and requests for production served on Mr. Bernier.   These proffers conform with the pleading requirements of subsections (b) and (e) of Local Rule 56.

Mr. Bernier, responding pro se, has failed to provide an opposing statement of material facts or properly controvert Aroostook County's statement of facts with record citations to comply with Local Rule 56.   Instead, Mr. Bernier submitted with his letter to the court eighty-one pages recounting what he was served at meals, *Pl.'s Opp'n*, Attach 1., *Correspondence with Jail* at 1-9, his grievance receipts, *id.* at 76-79, and approximately 60 pages of his grievance forms, some with the Jail staff's findings and signature and some without.   *Id.* at 9-73.   As Aroostook County points out, after Mr. Bernier did not respond to its interrogatories and request for production of these

22

materials, the Magistrate Judge granted its motion to extend time to complete discovery. *See Def.'s Mot. to Extend Disc. Deadline and Mot. Deadline*; *Order* (ECF No. 26). Mr. Bernier still did not respond to discovery requests sent to his new address by the new July 23, 2021, deadline. *See Order* (ECF No. 26); *Wall Aff.* at 5-6; *Def.'s Mot.* at 2.

"This District's Local Rules concerning the filing of statements of material fact, opposing statements of material fact, additional statements of material fact, and replies to additional statements of material fact have been an endless source of confusion and contention." *Widi v. McNeil*, No. 2:12-cv-00188-JAW, 2013 U.S. Dist. LEXIS 137135, at *8 (D. Me. Sept. 25, 2013) (citing D. ME. LOC. R. 56(b)-(d)). "As these Rules are difficult for lawyers to comply with, it is not surprising that [Mr. Bernier], himself not a lawyer, did not correctly respond to them." *Id.* The Court has tried to apply the Local Rules evenly with consideration of Mr. Bernier's pro se status. It would, however, be inappropriate for the Court to cull facts from Mr. Bernier's submissions to locate support for facts that are material to his claim, particularly as he did not produce his grievance-related records as requested during discovery. *See Widi*, 2013 U.S. Dist. LEXIS 137135, at *8; *Willette v. City of Waterville*, 516 F. Supp. 2d 139, 142 (D. Me. 2007). By not complying with the pleading rule governing opposition to summary judgment, Mr. Bernier has not given Aroostook County an opportunity to reply in any meaningful way to an alternative version of the facts. *See* D. ME. LOC. R. 56(d); 56 (f) ("Facts contained in a supporting or opposing statement

of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted").

### B. Lyle Bernier's Failure to Exhaust Administrative Remedies

#### 1. Legal Standard

The Prison Reform Litigation Act provides, in relevant part:

> No action shall be brought with respect to prison conditions under [§ 1983 of this title], or any other Federal law, by the prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The First Circuit has repeatedly upheld dismissal of suits brought under 42 U.S.C. § 1983 for failure to exhaust administrative remedies, noting that "'exhaustion is mandatory' and 'has a decidedly procedural emphasis.'" *Johnson v. Thyng*, 369 F. App'x. 144, 146 (1st Cir. 2010) (internal citations omitted) (first quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); then quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "That is, what must be exhausted is the process, not the form of relief." *Id.* "All 'available' remedies must [] be exhausted; those remedies need not meet federal standards; nor must they be 'plain, speedy, and effective.'" *Id.* at 146-47 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)) (alterations in *Thyng*). "A prisoner must exhaust administrative remedies before a complaint under § 1983 will be entertained even where the relief sought cannot be granted by the administrative process." *Id.* at 147 (citing *Booth*, 532 U.S. at 734).

#### 2. Analysis

"To properly exhaust administrative remedies, a prisoner must complete the prison grievance procedures." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[I]t

is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Id.* (citing *Jones*, 549 U.S. at 218) (alterations in *Thyng*).  Here, the Jail has an express three-level appeal process for grievances, which is explicitly explained on the forms provided to inmates who wish to file a complaint.  *See Grievance Policy* at 1.  The Grievance Policy requires the receiving Corrections Officer to issue "a receipt to the inmate filing the grievance" before submitting it to the Shift Supervisor "as soon as possible." *Id.*  "If the Shift Supervisor is unable to resolve the grievance, the original grievance form will be forwarded to the jail administrator prior to the end of the shift." *Id.*  The Jail Administrator must ensure "review of all grievances" and a "written response to all grievances within a reasonable time limit." *Id.* at 2. "Inmates may appeal the Jail Administrator's decision to the Sheriff within 10 days of receipt." *Id.*

Mr. Bernier took advantage of the Aroostook County Jail's Grievance Policy, filing many, mostly meal-related, complaints.  *See* DSMF ¶ 20.  Jail Administrator Craig Clossey says "all . . . were responded to per Policy." *Id.*; *Clossey Aff.* ¶ 12.  Jail Officer Denise Cummings "replied to all food-related grievances, reiterating [Jail] policy, and assuring [Mr. Bernier] that his meals were prepared separately from the general population, and on separate cookware." *Cummings Aff.* ¶ 13; *see* DSMF ¶ 20. Mr. Bernier did not appeal any of the grievance responses or decisions.  DSMF ¶ 20.

"For the purposes of the PLRA, '[p]ursuing administrative remedies by taking some, but not all, of the steps available does not constitute exhaustion of administrative remedies.'" *Nassar v. Ruze*, No. 17-10798-ADB, 2018 U.S. Dist.

LEXIS 46096, at *20 (D. Mass. Mar. 21, 2018) (quoting *Rodriguez v. Garcia*, No. 09-1094, 2011 U.S. Dist. LEXIS 140410, at *3 (D.P.R. Dec. 6, 2011)).  "An administrative remedy is 'available' under the PLRA even if it is an 'optional, rather than mandatory' avenue for review."  *Id.* (citing *Thyng*, 369 F. App'x. at 147).

In *Thyng*, the First Circuit affirmed the district court's dismissal of a complaint for failure to comply with the PLRA's mandatory exhaustion requirement where the plaintiff did not file a level-three appeal pursuant to the prison's grievance procedure, which stated "[i]f an inmate is not satisfied with the Warden/Director's response, he/she may file an appeal using the grievance form, to the Commissioner's office." 369 F. App'x. at 146-47.  The First Circuit reasoned that since an appeal to the Commissioner "was 'available,' even if not mandatory," the district court had properly dismissed plaintiff's § 1983 action for failure to exhaust administrative remedies.  *Id.* at 147-48 (citing 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted")).

Here, an appeal to the Sheriff was similarly "'available,' even if not mandatory."  *See id.*  Mr. Bernier has not properly presented his own facts or contested Aroostook County's statement that he did not appeal any of his grievances to the Sheriff to invoke the third level of administrative review available to him. Thus, because no reasonable jury could conclude that Mr. Bernier exhausted his available administrative remedies as required under the PLRA, the Court grants summary judgment in favor of Aroostook County.  As discussed below, even assuming

that Mr. Bernier could cure his failure to exhaust administrative remedies, his claims

fail on the merits.

### C.    Lyle Bernier's First Amendment Claim

#### 1.    Legal Standard

The First Circuit has explained that "[a] prison regulation which restricts an

inmate's First Amendment [free exercise] rights is permissible if it is reasonably

related to legitimate penological interests." *Lebaron v. Spencer*, 527 F. App'x. 25, 31-

32 (1st Cir. 2013) (alterations in *Lebaron*) (internal quotation marks and citation

omitted).  "Four factors are relevant in making this determination: '(1) whether there

is a valid, rational connection between the regulation and the legitimate government

interest put forward to justify it; (2) whether alternative means to exercise the right

exist; (3) the impact that accommodating the right will have on prison resources; and

(4) the absence of alternatives to the prison regulation.'"  *Id.* (citing *Kuperman*, 645

F.3d at 74).

#### 2.    Analysis

Mr. Bernier alleges that Aroostook County's failure to provide appropriate,

nutritionally adequate kosher meals, grant access to religious texts, and provide

holiday observance accommodations prevented him from practicing his religion, in

violation of the First Amendment's Free Exercise Clause.  In *Lebaron*, the First

Circuit noted that regarding "the adequacy of the [k]osher diet, it has been held 'that

a prisoner's religious dietary practice [will be found to be] substantially burdened

when the prison forces him to choose between his religious practice and adequate

27

nutrition.'" 527 F. App'x. at 30 (alterations in *Lebaron*) (quoting *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009)).  According to the undisputed record before the Court, Mr. Bernier was not presented with such a choice.

Aroostook County's Religious Services Policy allows inmates access to religious texts and states that "the Jail will solicit materials for all faith groups in the inmate population." *Religious Services Policy* at 4; *see* DSMF ¶ 13-15.  At his booking on May 21, 2019, the Jail noted Mr. Bernier's Jewish faith and approved him to receive a kosher and vegan diet while incarcerated.  DSMF ¶¶ 4, 8.  The Jail ordered a Hebrew-English Torah for Mr. Bernier on January 9, 2020, pursuant to this policy and delivered it to him on January 17, 2020.  DSMF ¶¶ 15-16.  Mr. Bernier's letters to the Court assert his desire for "Rabbinical blessing of Orthodox vegan foods," but the Rabbi William Siemers told Officer Cummings that the Jail's procedures for preparing kosher food were appropriate, that nothing more was required, and that it was not necessary to bless the facility.  *Cummings Aff.* ¶¶ 8-9.  Mr. Bernier's complaint and subsequent filings with the Court insist that he was given non-vegan and non-kosher food, food that had been improperly prepared using the general population kitchen equipment, and that his meals were otherwise nutritionally and calorically deficient.  For the purposes of opposing the instant motion, however, he has not provided any record support for his assertions or properly refuted Aroostook County's statement that all of his "meals were prepared according to the [Special Diets and Religious Services Policies], and they were tracked by staff to ensure sufficient caloric content."  DSMF ¶ 8.

If Mr. Bernier is suggesting that the Jail should have outsourced all his meals to a specialized kosher caterer, or created an entirely separate kosher kitchen facility within the Jail, other courts have recognized that there is "a compelling government interest in avoiding a meal plan that is extraordinarily expensive to provide."[3] *Curry v. Cal. Dep't of Corr.*, No. C-09-3408 EMC (pr), 2013 U.S. Dist. LEXIS 1659, at *22 (N.D. Cal. Jan. 4, 2013); *see Williams v. Annucci*, 895 F.3d 180, 191 (2d Cir. 2018) ("[C]ourts have found a compelling government interest in reducing costs where the government submitted detailed affidavits that showed that adopting the requested dietary restriction would significantly increase costs and administrative burdens").

Mr. Bernier fails to meet his burden to challenge the reasonableness of Aroostook County's Policies, pursuant to which Jail staff, out of an abundance of caution, consulted with a Rabbi who specifically informed them that their policy of preparing Mr. Bernier's kosher meals in separate pots and pans, which were also washed and stored separately from the rest of the kitchen pots and pans, was sufficient. DSMF ¶¶ 7, 9; *see Kuperman*, 645 F.3d at 74. Because there is no dispute

---

[3]     Aroostook County did not submit any cost estimates or food budget details in support of its assertion that kosher catering or separate kitchen facilities would be unduly expensive. In *Kuperman*, the prison similarly did not detail "ready alternatives" to a challenged regulation that the First Circuit assumed was restrictive to proceed to the *Turner* factor analysis. *Kuperman*, 645 F.3d at 77. ("Although the statements in the record are bare-boned, Prison Officials are not required to 'set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint'") (citing *Turner*, 482 U.S. at 90-91). "Rather, we look to 'whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal.'" *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003). "Kuperman has not done so, and so we find there were no ready alternatives to the regulation at issue here." *Id.* Here, Mr. Bernier does not suggest specific alternative means of kosher meal preparation and, more significantly, fails to make the initial showing that his free exercise of his Jewish faith was actually substantially burdened by Aroostook County's Policies, so as to require it to demonstrate its consideration of alternative means, such as special kosher catering or facilities, for him to exercise that right.

as to any material fact as to whether the Jail impermissibly restricted Mr. Bernier's access to kosher meals or free exercise of his Jewish faith, Aroostook County is entitled to summary judgment on Mr. Bernier's First Amendment claims.

### D.   Lyle Bernier's Eighth Amendment Claim

#### 1.   Legal Standard

"To prove an Eighth Amendment violation, the plaintiff[] must first show that they faced an objectively intolerable risk of harm" resulting from jail officials' acts or omissions. *Nunes*, 766 F.3d at 142 (internal quotation marks omitted) (quoting *Lakin v. Barnhart*, 758 F.3d 66, 71 (1st Cir. 2014)). "A plaintiff must then show that state officials 'kn[ew] of and disregard[ed]' the risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alterations in *Nunes*). "To satisfy this 'deliberate indifference' requirement, a plaintiff must show that state officials were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . dr[ew] the inference.'" *Id.* (citing *Farmer*, 511 U.S. at 837).

#### 2.   Analysis

Aroostook County urges the Court to grant its motion for summary judgment on Mr. Bernier's Eighth Amendment claim because a reasonable jury could not find that Mr. Bernier has shown an "objectively intolerable" risk of harm or that Jail officials "knew and disregarded" the risk of harm. *Def.'s Mot.* at 1-2; *Nunes*, 766 F.3d at 142.

Here, the facts in the summary judgment record do not support a finding of an Eighth Amendment violation based on deliberate indifference to Mr. Bernier's health

30

and nutritional needs.  The uncontroverted record submitted by Aroostook County reflects that after Mr. Bernier told Jail staff that he required a vegan and kosher diet at his booking, the Jail responded pursuant to its Special Diets Policy to "prepare special diets to meet the religious beliefs of inmates" and discussed its kosher meal preparation with a local Rabbi, also pursuant to the Policy that "[m]eals will be planned and prepared after consultation with appropriate religious professionals." DSMF ¶¶ 4-9.  Officer Cummings stated that she did her own research into Jewish holiday observance and attempted to consult with Mr. Bernier to arrange for customary religious meals.  DSMF ¶¶ 10-11.

Mr. Bernier's complaint and subsequent filings with the Court assert that Aroostook County failed to ensure that his meals were both kosher and vegan.  Mr. Bernier cites his "Kosher-Vegan dietary needs under Judaism faith," *Compl.* at 4, and emphasizes his desire for "Rabbinical blessing of Orthodox vegan foods."  *Pl.'s Opp'n* at 2.  Mr. Bernier presents no evidence that his vegan dietary restriction is related to his Jewish faith and Rabbi Siemers approved of the Jail's food preparation as consistent with the dietary requirements of Judaism.  Therefore, the Court has analyzed Mr. Bernier's veganism as a dietary, not a religious, preference.

Courts have found that, unless part of a religion that requires it, such as with African Hebrew Israelite or Buddhist prisoners, a vegan diet cannot be the basis of a RLUIPA or Free Exercise challenge.  *See, e.g.*, *McDavid v. County of Sacramento*, 2006 U.S. Dist. LEXIS 43711, *14 (E.D. Cal. June 26, 2006) (finding that "standing alone," "Plaintiff's veganism cannot be a 'religion' for purposes of the Free Exercise

31

Clause and RLUIPA"); *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 579 (E.D. Va.), *aff'd*, 68 F. App'x 460 (4th Cir. 2003) (unpublished) (inmate's claim that Christianity requires a vegan diet failed because he provided no objective evidence that his claim to a vegan diet was rooted in the religion).  Here, Mr. Bernier has made no showing that his Jewish faith calls for adherence to a vegan diet, so as to invoke RLUIPA and First Amendment protections on that issue.  *See Ephraim*, 313 F. Supp. 2d at 578 ("Plaintiff claims that as a Charismatic Christian, he is required to eat only fresh fruit, raw vegetables, whole grains, milk, and cheese. . . Absent [objective evidence of religious dietary requirements], Plaintiff has not established that his claims are rooted in a religious belief so as to invoke the protection of the First Amendment").  He also has not shown that Aroostook County otherwise acted with deliberate indifference in approving him for a special kosher and vegan diet and providing him with meals that it maintains were both kosher and vegan.  *Clossey Aff.* ¶ 9.

Mr. Bernier did not present any medical records or other factual support for his alleged weight loss and the other health problems he says he suffered as a result of inadequate nutrition and from his inability to eat the allegedly non-kosher, non-vegan food served to him.  Even if Mr. Bernier had record support for his allegations that his health suffered from Aroostook County's failure to meet his nutritional needs, he would still need to satisfy "the subjective prong of the deliberate indifference standard."  *Soucy v. Me. Dep't of Corr.*, No. 1:20-cv-00024-JDL, 2021 U.S. Dist. LEXIS 179850, at *16 (D. Me. Sept. 21, 2021).  As the First Circuit concluded on the issue of deliberate indifference in *Nunes*, "the record is so devoid of evidence of actual medical

risk to the plaintiffs as to make it unreasonable to conclude that the department knowingly disregarded such a risk."  766 F.3d at 143; *see also Soucy*, 2021 U.S. Dist. LEXIS 179850 at \*13-16.  Here, "the undisputed facts show that the [Jail] engaged in facially reasonable efforts" to implement its Special Diets and Religious Services Policies to meet Mr. Bernier's kosher dietary needs in a nutritionally-adequate way, "as to preclude a reasonable factfinder from inferring that the [Jail was] knowingly disregarding a harm" to him.  *Nunes*, 766 F.3d at 143.  Aroostook County is therefore entitled to summary judgment on Mr. Bernier's Eighth Amendment claim.

### E.    Lyle Bernier's RLUIPA Claim

#### 1.    Legal Standard

"RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment."  *Kuperman*, 645 F.3d at 79 (citing *Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 42 n.12 (1st Cir. 2007)).  "It bars prisons receiving federal funds from substantially burdening an inmate's religious exercise unless the regulation under attack is the least restrictive way to advance a compelling state interest."  *Id.* (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715-16 (2005)).  The First Circuit explained in *Kuperman* that the "inquiry [was] not into whether a religiously-acceptable alternative to growing a full beard existed."  *Id.* at 75.  Rather, the *Kuperman* Court "consider[ed] whether alternative means remained open for [the prisoner] to exercise the constitutionally-protected right at issue — here, free exercise of his religion."  *Id.* at 75.

"[A] RLUIPA plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Lebaron*, 527 F. App'x. at 28-29. "As for the adequacy of the [k]osher diet, it has been held that 'a prisoner's religious dietary practice [will be found to be] substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition.'" *Id.* at 30 (citing *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009)).

## 2.   Analysis

Mr. Bernier fails to meet his burden to show that his religious exercise has been substantially burdened and further that Aroostook County is responsible for that burden. *See Spratt*, 482 F.3d at 38. Regarding religious dietary restrictions, other courts have noted that "RLUIPA does not require a prison to build a separate kosher kitchen in which to prepare meals for Jewish inmates." *Roles v. Christensen*, No. 1:19-cv-00292-DCN, 2019 U.S. Dist. LEXIS 190255, at *14 (D. Id. Oct. 29, 2019) (citing *Baranowski v. Hart*, 486 F.3d 112, 125-26 (5th Cir. 2007) (holding that a prison's failure to provide kosher meals did not violate RLUIPA because it was the least restrictive means to serve the compelling government interests of "maintaining good order and controlling costs")). In *Baranowski*, the Fifth Circuit highlighted that: (1) the prison's "budget [wa]s not adequate to cover the increased expense of either providing a separate kosher kitchen or bringing in kosher food from the outside"; (2) the prison's "ability to provide a nutritionally appropriate meal to other offenders would be jeopardized (since the payments for kosher meals would come out of the

34

(blank)

general food budget for all inmates)"; (3) "such a policy would breed resentment among other inmates"; and (4) "there would be an increased demand by other religious groups for similar diets."  486 F.3d at 125.

Here, on the uncontroverted summary judgment record before the Court, Aroostook County's Policies and efforts to provide Mr. Bernier with kosher food and obtain a Hebrew-English Torah for him, combined with the absence of evidence of any official action to pressure Mr. Bernier to violate his beliefs, do not amount to a substantial burden on Mr. Bernier's religious exercise under RLUIPA.  Mr. Bernier submitted no admissible evidence to counterbalance the Jail officials' affidavits, which reflect that they acted in accordance with the Jail's Religious Services and Special Diets Policies and consulted with a Rabbi to ensure that their implementation of the kosher meal policy was in fact acceptable for Mr. Bernier's religious practice. *See Lebaron*, 527 F. App'x at 30-31 (upholding grant of summary judgment where the plaintiff's allegations that his kosher meals were calorically inadequate, contained rotten and non-kosher food, and were otherwise unsuitable, were conclusory and did not create a question of fact in light of the Prison Director of Food Services' affidavit laying out the kosher meal policy and attesting to its nutritional adequacy).

Even if Mr. Bernier could present a substantial burden to his religious exercise under Aroostook County's Policies, he has not further shown how they were not the least restrictive means available to the jail or even identified any specific alternative means.  *See Kuperman*, 645 F.3d at 80 (upholding grant of summary judgment on a prisoner's RLUIPA claim, as "consistent with [the conclusions] reached by other

courts considering even more restrictive regulations") (collecting cases).  Here, as in *Kuperman*, Mr. Bernier "submitted no admissible evidence to counterbalance the [Jail] Officials' affidavits" reflecting their efforts, in consultation with a Rabbi and consistent with the Religious Services Policy and Special Diets Policy, to comply with Mr. Bernier's religious and dietary needs within their practical limitations.  *See* 645 F.3d at 80.

## VI.   CONCLUSION

The Court GRANTS Aroostook County Jail's Motion for Summary Judgment (ECF No. 31).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of December, 2021